IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FALLOU SALL

Petitioner,

v.

JESSICA SAGE, WARDEN OF FCI LEWISBURG

Respondent.

3:26-cv-2930
(JUDGE MARIANI)

## MEMORANDUM OPINION

Before the Court is a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Fallou Sall ("Petitioner"). Because the Immigration Judge ("IJ") failed to adequately develop the record and engage with the evidence presented at the custody redetermination and further prevented Petitioner from presenting evidence and arguments on his behalf, Petitioner did not receive an individualized custody determination as to flight risk and danger to the community that comports with due process. As a result, his bond hearing was fundamentally unfair and violated his constitutional right to procedural due process. Accordingly, his petition will be granted, and Respondent Warden Sage will be ordered to immediately release Petitioner from custody. And because the Government has now twice violated Petitioner's constitutional rights, should it elect to re-arrest and re-detain him pursuant to § 1226(a), it must first demonstrate to a fair and impartial IJ by clear

and convincing evidence that continued detention under § 1226(a) is necessary because Petitioner presents a danger to the community or poses a flight risk if released.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Petitioner is a citizen of Senegal residing in the United States since 2023. In the petition, he alleges that "his prolonged and unconstitutional immigration detention" violates the Due Process Cause of the Fifth Amendment. (Doc. 1 at 1). Petitioner further claims that his bond hearing before the IJ was fundamentally unfair and challenges the conditions of his confinement at FCI Lewisburg. (Docs. 1 at 2-4, 12). He seeks his immediate release from custody or, alternatively, a new bond hearing. (Doc. 7 at 2-3). Respondent opposes the petition. (Doc. 7).

### A. Petitioner's Removal Proceedings.

On December 27, 2023, Petitioner unlawfully entered the United States near Lukeville, Arizona. (Doc. 7-3 at 2). He was served with a Notice to Appear charging him as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled, placed into removal proceedings, and released into the United States. (*Id.*).

On February 6, 2025, Petitioner was arrested by the Upper Darby Police Department and charged with Simple Assault and Harassment following a dispute with his sister.[1] (Doc.

---

1 Petitioner's sister is a medical resident in cardiology, a naturalized U.S. citizen, and Petitioner's immigration sponsor. (Doc. 8 at 8-9, 12-13). When she sought to testify at the custody redetermination hearing, the IJ twice refused and ultimately did not permit her to testify. (*Id.*)

7-2 at 4). On or about August 4, 2025, Petitioner's Simple Assault and Harassment charges were resolved when Petitioner pled guilty to "Disorderly Conduct with no further penalty." (Doc. 7-2 at 4).

On December 30, 2025, ICE arrested Petitioner in Philadelphia and transferred him to Moshannon Valley Processing Center in the Western District of Pennsylvania. (Docs. 7-2 at 3, 8 at 9). DHS records indicate that Petitioner was detained "without bond pending the outcome of removal proceedings." (Doc. 7-2 at 4).

On March 12, 2026, IJ Barbara Corkery sustained the charges in the Notice to Appear, found Petitioner removable, and denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture. (Doc. 7-5). Petitioner timely appealed to the Board of Immigration Appeals ("BIA").[2] (Doc. 7-6). On or about June 30, 2026, Petitioner was transferred to FCI Lewisburg where he remains detained to date. (Doc. 7-4 at 2).

On August 20, 2026, the BIA issued its decision on Petitioner's appeal and affirmed in part, vacated in part, and remanded to the IJ for further proceedings. (Doc. 7-6 at 6). The BIA concluded "that a remand is required because the Immigration Judge did not consider the respondent's claim that independent country condition evidence demonstrates

---

[2] On March 24, 2026, Petitioner appealed to the United States Courts of Appeals for the Third Circuit. *Sall v. Att'y Gen. U.S.*, 26-1668. His appeal was dismissed for lack of jurisdiction. (Doc. 10-1) ("As Petitioner has appealed the IJ's decision ordering him removed and the BIA has not affirmed the decision, there is no final order, and we lack jurisdiction over the petition for review.").

a well-founded fear of persecution on account of his sexuality. Thus, the decision does not contain sufficient factual findings or legal analysis to allow for meaningful appellate review." (*Id.* at 5). The BIA further instructed the IJ to "consider the respondent's claim based on independent evidence." (*Id.*). The BIA affirmed the IJ's adverse credibility findings related to his asylum application based on past persecution as well as the "denial of withholding of removal or protection under the Convention Against Torture." (*Id.* at 4-5). The BIA thus affirmed the IJ's denial of asylum based on past persecution but remanded for consideration of country specific conditions related Petitioner's fear of future persecution as a gay man in Senegal.

On September 20, 2026, and upon remand from the BIA, IJ Jacob Addicott denied Petitioner's application for asylum and ordered Petitioner removed to Senegal.[3] (Doc. 7-8 at 2-3). The IJ found that Petitioner is not credible "in any respect, which includes that the Court does not find the Respondent established that he is gay, bisexual, or otherwise associated with the LGBT+ community." (*Id.* at 2). "Notwithstanding country conditions

---

3 The IJ found that "[t]he only case-specific evidence on this issue is supplied as Exhibit 2," which includes Petitioner's own testimony and a letter from his uncle. (Doc. 7-8 at 2). The IJ found this evidence not credible and "insufficient as it is 1) from an interested witness; 2) unavailable for cross-examination; 3) lacks an identification document; and 4) the document is not notarized or sworn to." (*Id.*). The IJ noted that Petitioner's medical records "are not persuasive and were in part a basis for the adverse credibility determination in this matter" and that "[t]he certificate of marriage at Exhibit 2 is called into question for the reasons noted in the prior decision." (*Id.*). "Notwithstanding, however, the marriage certification does not support the Respondent's claim based on sexual orientation." (*Id.*).

evidence, the Court finds that Respondent has failed to establish a well-founded fear of future persecution based on his proposed sexual orientation." (*Id.*)

On October 19, 2026, Petitioner timely appealed to the BIA. (Doc. 13-1). Accordingly, Petitioner's removal order is not final.

**B. <u>Petitioner's Bond Hearing</u>.**

Petitioner remained mandatorily detained without bond for in excess of 250 days until he was permitted to request a custody redetermination before an IJ.[4] On September 8, 2026, IJ Peter McCary denied bond after concluding "there is no amount of bond that will ensure that respondent will not pose a danger to the safety of other persons or of property AND is likely to appear to any scheduled proceeding." (Doc. 7-7 at 2). The full transcript of the bond hearing is set forth below:

> The Court: All right. Good morning, this is Immigration Judge Peter McCary for the Elizabeth Immigration Court. Today is Tuesday, September 8, 2026. This is the case of Fallou Sall, case [xxx-xxx-xxx]. Respondent appearing live via Webex from the Lewisburg Detention Center. Online we have Mr. M. Hebanarez [phonetic], counsel for the Department of Homeland Security. Can I have Counsel for Respondent state appearances please?
>
> Ms. Bazzell: Good morning, Your Honor. Erica Bazzell here on behalf of Respondent, Fallou Sall.

---

4 On August 28, 2026, the United States Court of Appeals for the Third Circuit issued a decision holding that mandatory detention without the opportunity for bond for noncitizens similarly situated to Petitioner was unlawful and violates due process. *See Buele Morocho v. Warden Philadelphia FCI*, 189 F.4th 287, 292 (3d Cir. 2026) (holding mandatory detention without bond under 8 U.S.C. § 1225(b)(2)(A) for noncitizens "who had already entered the United States without inspection and been present for years" violates the INA and due process).

The Court: All right. And Ms. Bazzell, right now I have a Spanish interpreter from Lionbridge online that I had to do a telephonic interpreter to call in. Will the Respondent need a French interpreter, or can we waive interpretation?

Ms. Bazzell: I believe we can waive interpretation.

The Court: Okay, all right.

Ms. Bazzell: My client's English has improved.

The Court: Okay. Well, if necessary, I can drop the Spanish interpreter and get the French interpreter, but, you know, I prefer because that's the majority of the, you know, the Respondents to have the Spanish interpreter stay online. All right, so let's go ahead.

The Court: So, we have a bond case here.

Ms. Bazzell: Your Honor, could I just bring one thing to your attention before you get started?

The Court: Yes, is something wrong?

Ms. Bazzell: Well, I just wanted the Court to note that this hearing is not listed on ECAS, and the only way I knew about it was because I've gotten an email notification from one of the court personnel for another judge, and I told them I wasn't on that list. We'd had a master calendar hearing the prior day.

The Court: Okay.

Ms. Bazzell: And I told them that, you know, Fallou Sall's case was not on that list, and then he told me that it would be on this list, but it doesn't show on the docket that it's listed.

The Court: Okay.

Ms. Bazzell: And he sent me a notice, but it didn't have your name on it. So, I would have had no way of knowing where this hearing was held except that my client, the Respondent, informed me this morning that it was before you.

The Court: Okay.

Ms. Bazzell: So, I don't know where the glitch is there, but, you know, I would hate to have missed this hearing because it wasn't listed.

The Court: I do apologize for the inconvenience and any confusion. I know this was originally—I think this might have originally been set for another judge and then was moved over to me. I'm not sure exactly. I know there were a couple of cases where that did happen on my docket today. You know, if this is a non-habeas or even if it is and you're, you know, not ready to proceed today, and there is some, you know, room to continue the case and you need time, I can consider that application, but if you're, you know, ready to move forward, notwithstanding the unconventional notification, then let's do that.

Ms. Bazzell: Well, yes, Your Honor. My client is very eager to proceed on this. So I would ask that we proceed.

The Court: Okay, all right. So I'll start with the Department. Is there any argument that this Respondent is a danger to the community?

Mr. Hebanarez: Judge, give me a second. Of course, my system just crashed, and—why wouldn't it?

The Court: All right, well, let's—while he works on that, let's maybe go to, you know, the issue of flight risk, and then we can go back to danger. So tell me about the Respondent's—you know, it looks as though the Respondent was previously ordered removed. Is that correct?

Ms. Bazzell: Yes, Your Honor.

The Court: Okay.

Ms. Bazzell: He was [ordered] removed. He filed an appeal, and his case has been remanded—

The Court: Okay.

Ms. Bazzell: —for further consideration at the Immigration Court level.

The Court: Okay. So, let me look in here and see. Okay. Well then, since it has been remanded for further proceedings and based on my review of the BIA's order that

additional evidence needs to be considered about the basis for the well-founded persecution, then I will treat this as though no removal order has been entered and view it then as I would in a case where no removal order had been initially entered. That is, assessing based on the strength of the claim, you know, but typically for me, having had a removal order entered is a very strong negative for flight risk. I will not treat him as having had such an order entered. So, Mr. Hebanarez, are you ready on—

Mr. Hebanarez: Yes, Judge, and if I could?

The Court: Yeah.

Mr. Hebanarez: As far as that remand goes, I just want to point out to Your Honor that the IJ did make an adverse credibility determination.

The Court: Okay.

Mr. Hebanarez: And the BIA upheld the adverse credibility finding—

The Court: Okay.

Mr. Hebanarez: —for that, which I think is extremely important.

The Court: Okay. So, perhaps to be considered negative, but no more negative than a case that has not had an initial Oral Decision or other written decision by the Court, but not as negative as one where there is a removal order that's on appeal still, okay? So, go ahead, Mr. Hebanarez.

Mr. Hebanarez: As far as danger, Judge, Respondent has been arrested for simple assault and harassment. Our understanding is that he was in an altercation with his sister. They got into a fight, who I guess is also gonna be his sponsor, which is somewhat concerning, and he did take a plea deal down to disorderly conduct. I am not seeing in the record, however, the affidavit of probable cause or the complaint filed by the Respondent to give us the additional details on there, but that is the only criminal information we're aware of.

The Court: Okay, thank you.

Ms. Bazzell: Your Honor, the criminal matter was moved to a summary offense, moved to non-traffic. There was a guilty plea by the Respondent, and the case was

resolved. The last action date on the case was August 4, 2025. Dr. Kuru Sall [phonetic], who is the Respondent's sister, is present in the courtroom today.

The Court: Mmhmm.

Ms. Bazzell: She signed an affidavit which was attached to the bond determination petition, stating she and her brother are close, that they—that she has the means to provide for him should he be released from Lewisburg. She is—she states in that affidavit that she will ensure that the Respondent is completely compliant with any requirements imposed by the Court or imposed by the Department of Homeland Security. And she has been in communication with me since he was initially detained on December 30, 2025, and has been his advocate throughout this process.

The Court: Okay, very good. So, his only family connection in the United States is a U.S. citizen sister, right?

Ms. Bazzell: Yes, who is a cardiology resident and is prepared to support her brother to the full extent needed. She is—well—

The Court: Well, so I will say, based on what I know of residency, it does not pay very well, to the extent that, you know, financials and income and support are a factor.

Ms. Bazzell: It certainly does pay as well as she will be paid once she is finished [with] her residency, but she has also finished the residency for internal medicine, and she can support her brother. In addition to that, the second affidavit, Your Honor, that we attached was from his employer. He was employed at a restaurant in Philadelphia and his employer has stated the he was on good terms when he was forced to leave, that he is a hard worker, and that he was a—he made a substantive contribution to that restaurant community, and that he will be rehired if released from Lewisburg, which means that he can support himself or contribute to his own support as well—he was working at the restaurant when he was at—not the restaurant. It wasn't a restaurant. He was working in a kitchen when he was at Moshannon. And he is a kind and hard-working individual, and we just ask that he be released on bond so that he can work on his case, whatever decencies his case may have. He can work on his case from the outside, and he can continue to work. When he was Moshannon, he was obviously—you're more familiar even than I am with these facilities, but he wasn't in prison.

The Court: Right.

Ms. Bazzel: Now, he's in federal prison at the Lewisburg facility, and it's been a severe hardship one [sic] and mentally and physically. He's been detained for a very lengthy period of time, 9 months, and he is just asking the Court release him. He does not believe that he poses a flight danger, nor is he a risk to the outside community.

The Court: How long has been in the United States?

Ms. Bazzell: He's been in the United States since December of 2023.

The Court: Okay.

Ms. Bazzell: So, he's been here for over 2 years before he was detained.

The Court: Was he an EWI[5] or a visa overstay?

Ms. Bazzell: He was an EWI.

The Court: Okay.

Ms. Bazzell: Yes, he was in Arizona.

Unknown: Yes, he was in Arizona.

The Court: So, all right, anything else from either side on bond?

Mr. Hebanarez: Yes, Judge, I would like to be heard briefly.

The Court: Sure, go ahead.

Mr. Hebanarez: Just returning back to the danger element, as a prior criminal defense attorney, this is very common that we see this with these domestic type of altercations where the victim will call the police and then not want to move forward, and it's typically pled down. You know, Respondent has only been here barely 2, 2 ½ years at this point and has already been arrested with a very serious charge. I understand he did take a plea deal, but most people in this country do not get arrested in a matter of 2 ½ years. He's already been arrested. And actually, he was arrested in less than 2 years of actually being here. He was arrested in February of 2025. As it relates to any sort

5 "EWI" means "entered without inspection." *Bing Quan Lin v. Att'y Gen. U.S.*, 881 F.3d 860, 865 (11th Cir. 2018).

or equities, he entered the country illegally, again, breaking the law. He has one family member who is his sister who is apparently a resident, which I think, Judge, you sound like you're familiar with the demands and time being there. And Respondent did already receive and had an adverse credibility finding upheld by the BIA. So, his remand, he's going to have that in order to try to get asylum, which is frankly very unlikely. Very few [indiscernible] if not just a danger, a very substantial flight risk. And the likelihood that he would return and comply with a removal order are slim to none. We request first that you do find him a danger and, if you don't, then you do deny bond pursuant to flight risk.

Ms. Bazzell: Your Honor, may I respond?

The Court: Yes.

Ms. Bazzell: Your Honor, someone who has sustained a disorderly conduct charge, certain that's not—it would be ideal had he not been arrested at all. But, I mean [indiscernible] who is best equipped to assist him in the United States is present in this courtroom. *I would ask the Court to ask her to testify* as to her ability to assist him with compliance, with the Court moving forward, as well as her deep desire to see him be released on his own recognizance or with a bond, a reasonable bond so that he can continue to pursue his case.

The Court: Okay.

Ms. Bazzell: And, you know, the Court doesn't know what the outcome of his case will be. Certainly, there can be a projection based on other cases, but someone might have thought that his case would not have been remanded, that the Immigration Court would not have deemed the removal order moot, but those things happened in this case, and we're just asking that he be allowed to post bond and pursue his case. There is no reason for him to be staying. Immigration violations are not criminal in nature, and he—there's no reason for him to be continuously detained for an excessive period of time in federal prison.

The Court: So, I'm not gonna be, you know, swayed by where the Department has chosen to put him. If his—if the conditions of his detention are, you know, somehow inhumane or inappropriate, there is a path to relief for that that is outside this Court. That being said, you know, this is—unless there is just something that was filed that I haven't seen, this bond file is, you know, thin relative to what I'm used to seeing. There are no financials supporting the sister. I see a letter from her. There is no—she says she is naturalized but there is no proof of naturalization, no passport, no naturalization

> certificate, no records of him living anywhere. He's only—no financial records for him, no, you know, statements from friends that I see. The BIA hasn't overturned its ruling as I—it didn't overturn the credibility finding that was adverse to him. And, you know, as I understand it, while he did plead down, he pleaded—he still pleaded in connection with an incident in which his sister was the victim. You know, she had a letter that she provided to the Court in lieu of testimony on this. I'm going to deny bond on danger and flight. I assume Respondent wishes to reserve appeal?
>
> Ms. Bazzell: Yes.
>
> The Court: Okay. Appeal will be due October 8th.
>
> Ms. Bazzell: All right.
>
> The Court: Anything else from either side?
>
> Mr. Hebanarez: No, Judge, thank you.
>
> Ms. Bazzell: No. *I take it the Court was not willing to hear any testimony from Respondent's sister?*
>
> The Court: No, I'm not willing to take testimony. As I said, this is a summary proceeding. You have a letter to introduce her statement and you didn't address the incident. You know, no specific on financials or another of that stuff. So, I will—I've issued my ruling. If that's the only question, then we will be off the record and adjourned on this.
>
> Ms. Bazzell: Okay, thank you.
>
> Judge: All right, thank you. Off the record and adjourned.

(Doc. 8 at 4-14).

In an order memorializing his decision denying bond dated September 20, 2026, the IJ concluded "there is no amount of bond that will ensure that respondent will not pose a danger to the safety of other persons or of property AND is likely to appear to any scheduled proceeding." (Doc. 7-7 at 2).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

Because Petitioner filed his habeas petition *pro se*, the Court will carefully consider Petitioner's arguments and "liberally construe[]" the petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining the Court's "[special] obligation to liberally construe a *pro se* litigant's pleadings is well-established"). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

## III. ANALYSIS

Respondent has detained Petitioner for ten months.[6] Petitioner was first wrongfully mandatorily detained without bond for eight months under 8 U.S.C. § 1225(b)(2)(A). After the Third Circuit's opinion in *Buele Morocho* held that mandatory detention without bond under § 1225(b)(2)(A) for similarly situated petitioners violates the INA and due process, Respondent are now detaining Petitioner pursuant to § 1226(a).

The Court's analysis will proceed in three stages. First, the Court concludes that Petitioner is entitled to a bond hearing "both statutorily and as a matter of due process." *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 553 (D.N.J. 2026) (O'Hearn, J). Second, the Court explains why Petitioner's bond hearing was fundamentally unfair. Finally, the Court determines that "given the nature of the constitutional violations and the record before it, release is the only appropriate remedy." *Id.* at 553-54.

### A. Section 1226(a) and Due Process Require a Bond Hearing.

No one disputes that Petitioner is detained under § 1226(a) and that Respondent "unquestionably possess the authority to detain non-citizens during removal proceedings when Congress has authorized them to do so under § 1226(a)." *Zheng*, 826 F. Supp. 3d at

---

6 The Court has habeas jurisdiction and subject matter jurisdiction to consider the petition and incorporates by reference its prior jurisdictional analyses set forth in similar habeas petitions filed by civil immigration detainees. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D. Pa. Dec. 8, 2025); *see also Richeme v. Warden*, 2026 WL 937546, at *2-3 (M.D. Pa. Apr. 7, 2026). Furthermore, Petitioner is not required to exhaust his administrative remedies because do would be futile under the circumstances. *See Basboga v. Jamison*, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026) (requiring exhaustion of due process claim would be futile because neither an IJ nor the BIA "have authority to adjudicate" constitutional claims).

554. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). The statute also "permits the Attorney General to release those aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Id.* (quoting 8 U.S.C. § 1226(a)). Section 1226(a) thus "permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho*, 189 F.4th 287, 292 (3d Cir. 2026).

"Not only do the statute and federal regulations require a bond hearing, the Constitution does as well."[7] *Zheng*, 826 F. Supp. 3d at 554. The Fifth Amendment to the U.S. Constitution protects all persons within the United States, "including those alleged to have entered illegally," *id.*, from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "What process is due is

---

[7] "The implementing regulations establish a two-step framework for determining whether a noncitizen subject to removal should be detained or released." *A.J.P.S. v. Benzel*, 2026 WL 3131270, at *3 (D.N.J. Oct. 19, 2026). "First, DHS enforcement officials, including ICE agents, make an initial custody determination." *Id.* (citing 8 C.F.R. § 236.1(c)(8)). "Although § 1226(a) affords immigration authorities discretion to detain or release a noncitizen, the exercise of that discretion necessarily requires consideration of the particular noncitizen's circumstances." *Id.* After DHS makes the initial custody determination and denies release on bond, a noncitizen "may seek redetermination by an Immigration Judge, whose decision is subject to appeal to the Board of Immigration Appeals." *Id.* (citations omitted). A detainee may appeal to IJ's bond decision to the BIA and may also seek bond redetermination "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. §§ 1003.19(e), (f), 1003.38.

determined by analyzing both the private and governmental interests affected."[8] *Zheng*, 826 F. Supp. 3d at 554 (citing *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976)). Accordingly, the Court first finds that Petitioner is properly detained under § 1226(a), and, as a result, he is entitled to a bond hearing both as a matter of statute and constitutional due process. *Id.*

After a habeas petitioner receives a custody redetermination and the IJ denies bond, this Court's role is limited by statute.[9] Section 1226(e) "precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'" *Jennings*, 583 U.S. at 841 (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). This Court may not "re-weigh the evidence or determine credibility" as "that is committed to the discretion of the IJ." *Zheng*, 826 F. Supp. 3d at 555 (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *3 (3d Cir. Feb. 25, 2022) (nonprecedential)). Although federal courts lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision,

---

[8] Under *Matthews*, the Court must weigh three factors: (1) the "private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." 424 U.S. at 335.

[9] *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

"they may review whether the bond hearing was fundamentally unfair." *Fabricio-Valdez v. Lowe*, 2026 WL 2966191, at *2 (M.D. Pa. Oct. 2, 2026) (citation modified).

**B. <u>Petitioner's Bond Hearing Was Fundamentally Unfair</u>.**

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law." *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017). The Fifth Amendment's Due Process Clause requires adequate procedural protections before deprivations of protected liberty interests and guarantees noncitizens within the United States "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests." *Id; see also Ghanem*, 2022 WL 574624, at *2 (same). Determining whether a bond here was fundamentally fair is necessarily a fact-intensive inquiry.

Due process "***require[s] that the decision be grounded in the evidence presented at the hearing and accompanied by a statement indicating the reasons for the decision and the evidence relied upon***." *Zheng*, 826 F. Supp. 3d at 555 (emphasis added) (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)). Due process also requires a neutral decisionmaker who "must actually consider the evidence and argument a party presents and denies due process when it acts as a mere rubber-stamp." *Id.* (citation

modified). "These requirements presuppose an impartial decisionmaker." *Zheng*, 826 F. Supp. 3d at 555 (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)).

"For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ 'must be individualized and support a finding that continued detention is necessary to prevent [the detainee] from fleeing or harming the community." *Fabricio-Valdez*, 2026 WL 2966191, at *3. A bond hearing is "individualized" if (1) "it is not so arbitrary that it would offend fundamental tenets of due process," (2) "if there is a discernible rational basis for the underlying administrative decision," and (3) "if the immigration judge applies the correct legal standards."[10] *Zheng*, 826 F. Supp. 3d at 555); *see also Fabricio-Valdez*, 2026 WL 2966191, at *3 (same).

"Mechanistic reliance on factors that are common to all § 1226(a) detainees will not suffice." *Id.* Moreover, the BIA "has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight." *Id.* The so-called *Guerra* factors include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal history, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of

---

10 "And because civil immigration detention is preventive rather than punitive, a finding of some abstract risk does not by itself justify continued confinement; the inquiry must also ask whether that risk can reasonably be managed short of detention." *Tasigchana v. Soto*, 2026 WL 2937677, at *2 (D.N.J. Sept 30, 2026) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213-14 (3d Cir. 2020)).

> immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at *3 n.39.

### 1. <u>The IJ Did Not Adequately Develop the Record</u>.

An IJ has a duty to adequately develop the record and engage in on the record factfinding. *See U.S. ex re. Zhelyatdinov v. Ashcroft*, 2002 WL 31957526, at *8 (E.D. Pa. Dec. 27, 2002) ("The record must contain, as a matter of due process, at least some evidence to support the decisions of the Immigration Judge.") (citing *Garner v. Louisiana*, 368 U.S. 157, 163 (1961)). The IJ's duty to adequately develop the record to allow for meaningful judicial review "exists under the due process clause," not § 1226 or any of its implementing regulations. *See Francisco v. Dept. of Homeland Sec.*, 2026 WL 2569007, at *5 n.35 (M.D. Pa. Aug. 31, 2026 (noting "a series of cases from the Court of Appeals implies that such a duty exists under the due process clause, even if there is no statutory obligation to do so in § 1226") (collecting cases) (Brann, C.J.); *see also Ghanem*, 2022 WL 574624, at *2 (a fundamentally fair bond hearing requires "factfinding based on a record").

An IJ also "has an affirmative duty to ensure that his determination is based upon a record not so devoid of evidence as to render a default judgment against the petitioner." *Francisco*, 2026 WL 2569007 at *5. Although an IJ "need not discuss ad nauseam every piece of evidence nor spell out every last detail of her reasoning where the logical underpinnings are clear from the record," an IJ "generally must sufficiently explain

their reasoning to permit appellate or judicial review." *Pomaquiza Samba v. Brackett*, 2026 WL 3131249, at *4 (D.N.H. Oct. 20, 2026) (McAuliffe, J.).

Here, there is no evidence in either the bond hearing transcript or the written order denying bond that suggests IJ McCary complied with his duty to adequately develop the record and explain his reasoning underlying his determinations. Troublingly, the IJ did not state on the record, or in the written order denying bond to Petitioner, what evidence supported his determinations or explain why the preponderance of the evidence presented at custody redetermination supported his findings that "there is no amount of bond that will ensure that respondent will not pose a danger to the safety of other persons or of property AND is likely to appear to any scheduled proceeding." (Doc. 7-7 at 2). The IJ's inquiry here was "barely surface level" and "the record created at Petitioner's bond hearing was insufficient to meet due process guarantees of a fundamentally fair hearing. See *Francisco*, 2026 WL 2569007, at *5 (finding "the record created at Petitioner's bond hearing was insufficient to meet due process guarantees of a fundamentally fair hearing"). Under these circumstances the IJ "failed in his duty to develop the record" and Petitioner "was deprived of the due process right to decisionmaking based on a record." *Id.*

**2. <u>Meaningfully Opportunity to Present Arguments & Evidence</u>**

Petitioner was also deprived of his liberty without a fair and meaningful opportunity to present arguments on his own behalf when the IJ twice refused counsel's request to allow his sister to testify on his behalf. Due process requires "a full and fair hearing that allows

[petitioner's] a reasonable opportunity to present evidence on their behalf." *Mujica-Marquez v. Hoover*, 2026 WL 1483740, at *1 (M.D. Pa. May 27, 2026) (Brann, C.J.).

Here, the unique circumstances presented in this case lead to the inevitable conclusion that the IJ refusal to allow Petitioner's U.S. citizen sister to testify at the custody redetermination deprived Petitioner of a meaningful opportunity to present arguments and evidence on his behalf, thus rendering the bond hearing fundamentally unfair and arbitrary. Petitioner's sister was present in the Court and is his immigration sponsor and the alleged victim of his dismissed criminal charges. Thus, Petitioner's sister's testimony was germane to any determination that he would present a flight risk or a danger to the community if released. *See Barreto v. Dept. of Corr.*, __ F. Supp. 3d __, 2026 WL 3090232, at *5 (D. Alaska Oct. 15, 2026) (IJ refusing to hear testimony from petitioner and probation officer at custody redetermination was a denial of due process when the result prevented petitioner from "explaining the circumstances" leaving him unable to "present[] evidence on the changes he has made in the two years since his arrest through treatment and community support").

Allowing Petitioner's sister to testify would have allowed her "to explain the basis for their assertions of lack of dangerousness" and lack of flight risk, "and respond to the concerns supporting continued detention." *Id.* "Because that testimony could have affected the outcome" the Court concludes refusing to hear testimony for Petitioner's sister "deprived Petitioner of a meaningful opportunity to present his case and violated due process." *Id.*

And, importantly, the IJ and Respondent failed to provide any notice to Petitioner's counsel of the bond hearing, and she only learned of the hearing from a court employee working for a different IJ. (Doc. 8 at 4-5). Under these circumstances, refusing to permit Petitioner's sister to testify in these circumstances was wholly arbitrary, an abuse of discretion, and deprived Petitioner of a meaningful opportunity to present evidence and arguments on his behalf.

**3. Individualized Evidence of Danger to the Community.**

Due process also requires an "individualized determination" specific to the petitioner. *Serrano-Alberto*, 859 F.3d at 213. The IJ found that Petitioner failed to demonstrate that he would not pose a danger to the community if released. A review of the bond hearing transcript makes clear the only evidence supporting that finding was Petitioner's dismissed criminal charges for Simple Assault and Harassment following a fight with his sister, which resulted in a guilty plea to Disorderly Conduct. (Doc. 8 at 7-8, 11-13). Although an IJ "may properly consider charges even after criminal charges are dismissed," the "IJ is still obligated to provide an individualized consideration supported by legitimate evidence." *Fabricio-Valdez*, 2026 WL 2966191, at *4; *see also Tursunov v. Butler*, 2026 WL 2655077, at *4 (M.D. Pa. Sep. 9, 2026) (relying only on dismissed criminal charges to find danger rendered bond hearing "deficient because the IJ did not sufficiently engage with Petitioner's circumstances to render an individualized determination of danger as to him") (Brann, C.J.).

In *Fabricio-Valdez*, Judge Brann held that a bond hearing "was constitutionally deficient because the IJ did not sufficiently engage with Fabrico-Valdez's circumstances to render an individualized determination of danger." 2026 WL 2966191, at *4. There, like, here, the "only relevant issue presented" at the hearing was the petitioner's prior criminal charges "absent any context or explanations such as charging documents or affidavits, that had since been dismissed." *Id.* Judge Brann found that the IJ's "complete reliance" on the petitioner's "dismissed charges was procedurally insufficient" and that "[c]ontinued detention resting solely on an arrest never tested following the full procedural protections our criminal justice system offers lacks the neutral fact-finding that due process requires." *Id.* (internal citation and quotations omitted).

Here, the IJ relied only on Petitioner's dismissed criminal charges in concluding that "there is no amount of bond that will ensure that respondent will not pose a danger to the safety of other persons or of property." (Doc. 7-7 at 2). Counsel for DHS presented no information regarding the dismissed charges, such as the charging documents or an affidavit.[11] *See Fabricio-Valdez*, 2026 WL 2966191, at *4 ("To hold that this determination

---

[11] When asked by the IJ if there was "any argument that this Respondent is a danger to the community," counsel for DHS indicated that his "system just crashed." (Doc. 8 at 5). Although counsel for DHS later argued that Petitioner is a danger to the community, it presented no documentary evidence supporting his claim, like the charging document or affidavit of probable cause. (*Id.* at 7) ("As far as danger, Judge, Respondent has been arrested for simple assault and harassment," and "[o]ur understanding is that he was in an altercation with his sister. They got into a fight"). Counsel for DHS also appeared to argue that Petitioner's unlawful entry in the United States supports a finding of danger. (*Id.* at 11) ("As it relates to any sort of equities, he entered the country illegally, again, breaking the law."). However, Petitioner's unlawful entry cannot support the IJ's determination that he would present a danger to the community if released "because it is a factor that is common to all § 1226(a) detainees." *Fabricio-Valdez*, 2026 WL 2966191, at *5. At the hearing, Petitioner's counsel presented evidence that the criminal charges have been dismissed and

was procedurally proper would be to endorse a *per se* rule that any prior charges, even when dismissed and where no additional evidence on their foundation is presented by the Government, may alone bar a noncitizen from bond.").

Under these circumstances, the IJ's determination that Petitioner posed a danger to the community if released based solely on dismissed criminal charges, coupled with his refusal to permit his sister to testify at the hearing, reveal that the IJ "failed to make an individualized determination considering sufficient facets of the relevant circumstances." *Fabricio-Valdez*, 2026 WL 2966191, at *4. If the IJ sufficiently considered Petitioner's individual circumstances, and not have acted as a mere rubber stamp, he "could have weighed the evidence differently and came to a different conclusion regarding Petitioner's dangerousness" or flight risk. *Tursunov*, 2026 WL 2655077, at *5. Accordingly, the IJ's determination did not provide Petitioner with the type of individualized custody determination as to dangerousness that the Fifth Amendment's Due Process Clause requires. *See Serrano-Alberto*, 859 F.3d at 213 (due process requires "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make

---

resolved and counsel for DHS did not dispute that. While the record makes it impossible to determine if the IJ relied on this to support his finding of flight risk, to the extent he was concerned there was no affidavit of probable cause so he could not determine the factual allegations underling the Assault and Harassment Charges, he should have permitted Petitioner's sister—the alleged victim of those dismissed charges—to testify at the hearing. *See Tursunov*, 2026 WL 2655077, at *5 ("Petitioner's counsel submitted evidence that these charges had been dismissed, but the IJ held that Petitioner could not meet his burden because he did not obtain further evidence as to the reason for dismissal, even where Respondents provided no additional information to suggest that the charges were well-founded.").

arguments on his or her own behalf; and (3) an individualized determination of his or her interests.").

### 4. Individualized Evidence of Flight Risk.

The IJ also found that Petitioner would pose a flight risk if released. Because the IJ did not state on the record or in his written order the evidence he considered in determining flight risk, the Court is unable to perform a meaningful review to determine whether the IJ made an individualized determination as to flight risk. At the conclusion of the bond hearing, IJ stated his "reasoning" for denying bond:

> So, I'm not gonna be, you know, swayed by where the Department has chosen to put him. If his—if the conditions of his detention are, you know, somehow inhumane or inappropriate, there is a path to relief for that that is outside this Court. That being said, you know, this is—unless there is just something that was filed that I haven't seen, this bond file is, you know, thin relative to what I'm used to seeing. There are no financials supporting the sister. I see a letter from her. There is no—she says she is naturalized but there is no proof of naturalization, no passport, no naturalization certificate, no records of him living anywhere. He's only—no financial records for him, no, you know, statements from friends that I see. The BIA hasn't overturned its ruling as I—it didn't overturn the credibility finding that was adverse to him. And, you know, as I understand it, while he did plead down, he pleaded—he still pleaded in connection with an incident in which his sister was the victim. You know, she had a letter that she provided to the Court in lieu of testimony on this. I'm going to deny bond on danger and flight. I assume Respondent wishes to reserve appeal?

(Doc. 8 at 13).

Although the IJ did not explicitly state his rationale on the record, from what the Court could gather from its review of the IJ's decision, he could only have rested his flight risk determination on: (1) Petitioner's unlawful entry into the United States (Doc. 8 at 10); (2) the apparent lack of "financials" provided by Petitioner and sister and sponsor and his

rank and wholly gratuitous speculation that a medical residency in cardiology "does not pay very well" (*Id.* at 9, 12-13); (3) the apparently "thin" bond file (*Id.*); (4) that his Sister's affidavit apparently contained "no proof of naturalization, no passport, no naturalization certificate" (*Id.* at 13); (5) "no records of [Petitioner] living anywhere," (*Id.*); (6) the lack of statements "from friends," (*Id.*); or (7) the BIA affirmance of the IJ's adverse credibility finding (*Id.* at 7).

First, Petitioner's unlawful entry in the United States cannot support the IJ's determination that he was a flight risk "because it is a factor that is common to all § 1226(a) detainees." *Fabricio-Valdez*, 2026 WL 2966191, at *5; *see also Mujica-Marquez*, 2026 WL 1483740, at *4 (same). Counsel for DHS also stated that "[a]s it relates to any sort equities, he entered the country illegal, again, breaking the law." (Doc. 8 at 11). Because unlawful entry "is common to nearly all individuals receiving a bond hearing pursuant to § 1226(a)," it "cannot support the denial of bond, as it is far too generalized a concern." *Mujica-Marquez*, 2026 WL 1483740, at *4.

Second, the IJ appears to base his flight risk determination on the lack of "financials" provided by Petitioner's sister/sponsor and the apparent thinness of the bond file. (Doc. 8 at 12-13). The contents of the bond file, including the allegedly deficient "financials," remain unclear to this Court because the IJ never once discussed in any detail the contents of the bond file on the record. Relatedly, at the bond hearing the IJ speculated that a medical residency in cardiology based in Philadelphia "does not pay very well." (*Id.* at 9). DHS

counsel never argued that Petitioner's lack of financial support supported a determination that he would present a flight risk if released. The IJ *sua sponte* raised the issue and never addressed the letter from Petitioner's former employer stating he would rehire Petitioner at his restaurant upon his release from ICE custody.

Third, the IJ apparently took issue with the affidavit of Petitioner's sister for not containing proof she was a U.S. citizen (such as a copy of her passport or naturalization document). While an IJ may properly consider a noncitizen's family ties in the United States when determining flight risk, here the IJ abused his discretion by twice refusing to permit Petitioner's sister to testify at the bond hearing and by not referring to the contents of her affidavit (which he repeatedly referred to as a "letter") in any detail. DHS counsel never argued that Petitioner's sister is not a United States citizen and did not present any arguments related to his sister and how her immigration status was relevant to flight risk. The IJ again *sua sponte* raised this issue while declining to engage with the evidence and arguments before him. And, considering that the IJ and Respondent failed to provide any notice to Petitioner's counsel of the bond hearing, and only learned it from an court employee working for a different IJ, refusing to allow Petitioner's sister to testify in these circumstances was wholly arbitrary.

Fourth, and relatedly, while the IJ stated in conclusory fashion that there is no evidence of Petitioner's address, he failed to acknowledge or consider his counsel and sister's representations that if released he would be living at her home near Philadelphia.

Whether the noncitizen has a fixed address in the United States is one of the *Guerra* factors as is properly considered by the IJ. *Tursunov*, 2026 WL 2655077, at *4. DHS counsel never argued that Petitioner's lack of fixed address supported a determination that he would present a flight risk if released. Rather, the IJ once again *sua sponte* raised this issue.

Fifth, to the extent that the IJ took issue with the lack of letters from "friends," that is not a valid reason to find flight risk under these circumstances. Although lack of ties to the community is a valid consideration to the flight risk determination, *see Francisco*, 2026 WL 2569007, at *6, here the IJ never addressed the letter from Petitioner's former employer at any point during the hearing and a noncitizen's employment history is one of the *Guerra* factors and relevant to an IJ's flight risk determination.[12] Nor did the IJ "connect" Petitioner's lack of letters from friends to "any specific risk of flight for Petitioner." *Id.* At bottom, "the IJ did not properly analyze Petitioner's community ties." *Francisco*, 2026 WL 2569007, at *5. "Without more on the record from which a proper analysis of Petitioner's community ties and risk of flight could be conducted, a finding of 'limited ties' therefore, reflects a boilerplate conclusion rather than an individualized analysis based on Petitioner's circumstances." *Id.*

Here, instead of acknowledging on the record what the bond application contained and tying that to his finding of flight risk, the IJ took issue with the "thin" bond file and the

---

12 *See Fabricio-Valdez*, 2026 WL 2966191, at *5 n. 54 (noting that "courts have accepted as relevant evidence that the same employer would continue to employ a petitioner following release") (collecting cases).

apparent lack of letters from "friends." He neither considered nor acknowledged on the record that Petitioner "has lived in the same community nearly the entire time that he has resided in the United States and [] has consistently worked within that community." *Mujica-Marquez*, 2026 WL 1483740, at *5. And, once again, DHS counsel never argued that Petitioner's lack of community ties supported a determination that he would present a flight risk if released. Rather, the IJ once again *sua sponte* raised this issue. *See Tursunov*, 2026 WL 2655077, at *4 (finding the IJ "did not engage with any of the other evidence supplied by Petitioner as to his community ties and sponsors").

Finally, the IJ relied on the BIA affirmance of the IJ's adverse credibility finding concerning his application for asylum for past persecution to support his conclusion that Petitioner presents a flight risk if released.[13] The adverse credibility finding remains subject to review by the Third Circuit and Petitioner has the ability to seek review in the Courts of Appeals following his second appeal to the BIA. While an IJ may consider the status of Petitioner's immigration proceedings in determining risk of flight, he or she still must "connect Petitioner's low likelihood of success on his appeal to any specific risk of flight for Petitioner." *Francisco*, 2026 WL 2569007, at *6.

---

13 An "adverse credibility" finding is "a finding of fact" by an Immigration Judge that the asylum applicant's testimony can or cannot be relied on in "supporting his claim for relief from removal. An alien's credibility, by itself, may satisfy his burden, or doom his claim." *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc), *superseded on other grounds by* 8 U.S.C. § 1158(b)(1)(B)(iii).

Here, IJ McCary failed to connect the BIA's affirmance of the IJ's adverse credibility finding to an individualized determination of Petitioner's flight risk. Although the *Guerra* factors are "not the only consideration an IJ may use when determining risk of flight, it is informative that likelihood of success is absent from the *Guerra* factors entirely." *Id.* at n.63. Moreover, "likelihood of success on the merits [is] minimally probative for risk of flight, if probative at all." *Id.*; *see also A.S.G. v. Oddo*, __ F. Supp. 3d __, 2026 WL 3117712, at *3 (W.D. Pa. Oct. 13, 2026) ("Concluding that Petitioner is unlikely to be successful in his appeal does not necessarily connect to the determination that Petitioner is not likely to appear to future immigration proceeding" as "[t]he same logic would apply [to] nearly every bond applicant under 8 U.S.C. § 1226(a) with a pending appeal") (Hornak, J.); *see also Maradiaga, v. Hernandez*, 2026 WL 3121383, at *5 (W.D. Wash. Oct. 19, 2026) (granting release because "the IJ fails to explain how a previous adverse credibility finding against Maradiaga in his immigration case makes him more likely to flee, abandoning his family, community, job, and real property," and thus finding of flight risk was erroneous as a matter of law). "If the fact that a detainee is appealing his immigration status was determinative of flight risk, a bond hearing would be a mere rubber stamp invalidating the very purpose for which it is held." *A.S.G.*, __ F. Supp. 3d __, 2026 WL 3117712, at *3. Thus, while an IJ "has significant discretion in determining the weight to afford facts relevant to a bond decision, the IJ must exercise that discretion in individualized fashion based on the

noncitizen's specific circumstances, not merely the procedural posture of their removal proceedings." *Id.*

In sum, had the IJ sufficiently considered Petitioner's individual circumstances, instead of acting as "mere rubber stamp," he "could have weighed the evidence differently and came to a different conclusion regarding Petitioner's dangerousness" or flight risk.[14] *Tursunov*, 2026 WL 2655077, at *5. Accordingly, the IJ's determination did not provide Petitioner with the type of individualized custody determination as to flight risk that the Fifth Amendment's Due Process Clause requires.

**5. <u>The Totality of the Circumstances Show a Fundamentally Unfair Bond Hearing That Was Not Individualized</u>.**

The Court's review of the bond hearing transcript and the totality of the circumstances leads it to easily conclude that Petitioner's bond hearing was fundamentally unfair. *See Mujica-Marquez*, 2026 WL 1483740, at *1 ("A review of the available evidence demonstrates to the Court that, while the bond hearing appears facially to have been individualized, the analysis provided by the IJ was insufficient to satisfy the requirements of the Due Process Clause."). And no reasonable reading of the transcript could support a finding that Petitioner received an "individualized determination" as to his dangerousness or

---

14 *In Mujica-Marquez*, Judge Brann found the failed to make individualized flight risk determination when he "relied on only three considerations" to find flight risk: "he entered the country unlawfully; he had only been in the United States for approximately four years, which the IJ termed 'pretty recent'; and his grounds for relief from removal are speculative"). 2026 WL 1483740, at *4; *see also Zheng*, 826 F. Supp. 3d at 556 (bond hearing was fundamentally unfair when the IJ "failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk").

risk of flight. *Ghanem*, 2022 WL 574624, at *2; *see also Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 679 (W.D. Tex. 2025) ("This is unlike a case in which a bond hearing was held, an individualized assessment was made regarding the appropriateness of detaining a non-citizen and, in the IJ's discretion, they were denied bail.").

The IJ's lack of on the record statements of the evidence he considered supporting his flight risk and danger determination is concerning and makes it "impossible for this Court to perform any meaningful review of the IJ's decision and conclude that there was an individualized determination." *Zheng*, 826 F. Supp. 3d at 557. And unlike the IJ in *Mujica-Marquez*, the IJ here did not even "purport[] to examine and weigh the relevant factors for and against bond."[15] 2026 WL 1483740, at *4. The transcript and written order are thus devoid of any evidence that the IJ "actually considered the evidence and arguments that the parties presented; rather, []he merely rubber-stamped the Respondent's decision to deny bond."[16] *Zheng*, 826 F. Supp. 3d at 557 (citation modified).

---

15 Unlike the IJ in *Fabricio-Valdez*, the IJ here did not note that "his analysis was governed by the *Guerra* factors," and did not "reference[] and develop[] the record on several factors" justifying his flight risk determination. *Fabricio-Valdez*, 2026 WL 2966191, at *5. In fact, the record provides "no analysis whatsoever" and the IJ "gave no indication of the factual basis" for his decision. *Zheng*, 826 F. Supp. 3d at 557. Nothing suggests the IJ actually reviewed any exhibits on the record and he did not "walk[] through the record on the transcript before rendering a decision." *Tasigchana*, 2026 WL 2937677, at *2. At bottom, nothing in the record suggests that the IJ "appeared to weigh the evidence submitted and come to an individualized determination" as to Petitioner's flight risk and dangerousness. *Fabricio-Valdez*, 2026 WL 2966191, at *5; *see also Zheng*, 826 F. Supp. 3d at 557-58 ("Here, the IJ's decision stands in stark contrast to these decisions as it is not supported by any detail or reference to *any* factual evidence in the record.").

16 There nothing in the record supporting IJ McCary's written order denying bond and concluding "there is no amount of bond that will ensure that respondent will not pose a danger to the safety of other persons or of property AND is likely to appear to any scheduled proceeding." (Doc. 7-7 at 2).

Although the IJ referenced the bond application, he did not state that he reviewed that submission and there is nothing in the record to support a conclusion that he did. IJ McCary "did not provide even a minimal articulation of the basis" for his decision but instead "stated in mere conclusory fashion that Petitioner was a flight risk" and danger to the community. *Id.* at 558. That is "not an individualized assessment", resulting in a bond hearing that was fundamentally unfair and in violation of Petitioner's due process rights. *Id.*; *see also Miri v. Bondi*, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026) (IJ abused his discretion resulting in unfair bond hearing when he "did not explain the reasons for denying petitioner's bond" and "did not describe . . . which factors were considered, if any, or what evidence was relied on") (citation modified); *Ramos v. Barr*, 2020 WL 13554813, at *3 (W.D.N.Y. Dec. 29, 2020) (bond hearing constitutionally inadequate where, among other things, "there was no record of the IJ's rationale in denying bond, and instead the decision is simply reflected by a one-page form").

The Due Process Clause requires adequate procedural protections before deprivations of protected liberty interests and guarantees noncitizens within the United States "an opportunity to be heard at a meaningful time and in a meaningful manner." *Serrano-Alberto*, 859 F.3d at 213. Because the IJ did not satisfy his duty to develop an adequate record, did not state his reasoning on the record, failed to allow Petitioner the opportunity to make arguments on his behalf, and did not make any individualized determinations of Petitioner's interest before depriving him of his liberty, the IJ's denial of

bond was arbitrary and not in accordance with our Constitution's guarantee of due process.[17] And, under the circumstances presented here, the Court can only reach the conclusion that the IJ here acted as a "mere rubber-stamp." *Zheng*, 826 F. Supp. 3d at 556. As such, the Court has no trouble concluding that Petitioner's bond hearing was fundamentally unfair and violated his due process rights and will grant his petition.

**C. Prolonged Detention Under § 1226(a).**

Petitioner has been detained for ten months without a constitutionally adequate bond hearing and also alleges in his petition that his detention has become unreasonably prolonged. (Doc. 1 at 2). Recently, several district courts within the Third Circuit have applied *German Santos'* "nonexhaustive list of four factors" to determine whether habeas petitioners properly detained under § 1226(a), and who had initial bond hearing before an IJ, are entitled to a second bond when their civil immigration detention becomes unreasonably prolonged.[18] *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d

---

17 To the extent that Petitioner is required to demonstrate "substantial prejudice resulted" from the due process violation at his bond hearing, the Court easily finds substantial prejudice. *Serrano-Alberto*, 859 F.3d at 213; *see also Tursunov*, 2026 WL 2655077, at *5 (petitioner shows "substantial prejudice" when the identified deficiencies in the bond hearing "are the kind that changes entirely the composition of the proceeding"); see also *Francisco*, 2026 WL 2569007, at *7 (finding "substantial prejudice" when "there was an insufficient record, no meaningful opportunity for Petitioner to present arguments, and no individualized determination made regarding Petitioner's circumstances" because "each of these deficiencies is the sort that changes entirely the composition of the proceeding").

18 *See, e.g.*, *Barnes v. Sage*, 2026 WL 3057723, at *4-5 (M.D. Pa. Oct. 13, 2026) (M.D. Pa. Oct. 13, 2026) (applying *German Santos* factors to § 1226(a) detainee and concluded that continued detention "has not become unreasonable such that Petitioner's detention warrants a new bond hearing") (Mannion, J.); *C.C.M. v. Wolford*, 2026 WL 3026468, at *2 (W.D. Pa. Oct. 8, 2026) ("The *German Santos* factors are properly applied to either detention statute.") (Flowers Conti, J.); *Balde v. Lowe*, 2026 WL 2984996, at *4 (M.D. Pa. Oct. 6, 2026) (applying the *German Santos* factors to § 1226(a) detainee challenging prolonged detention

203, 211 (3d Cir. 2020). Although *Borbot* held that "duration alone" cannot "sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations," 906 F.3d at 277, it "left open the possibility that 'despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause.'" *Barnes*, 2026 WL 3057723, at *4 (quoting *Borbot*, 906 F.3d at 280).

Here, however, because Petitioner never had a constitutionally adequate bond hearing in the first place, the Court not need determine whether his § 1226(a) has become unreasonably prolonged.[19] *See Zheng*, 826 F. Supp. 3d at 560 n.12 (noting that "to the

---

and concluding "even if *German Santos* applies, Balde's detention has not yet reached an unconstitutionally prolonged length given the fairly short duration of his confinement since his bond hearing") (Brann, C.J.); *Kurt v. Soto*, __ F. Supp. 3d __, 2026 WL 2690194, at *2 (D.N.J. Sept. 14, 2026) ("This case requires the Court to squarely address a question that it has so far reserved judgment on and which the Third Circuit has left open: when, if ever, does the Due Process Clause entitle a noncitizen properly detained under § 1226(a) to a second bond hearing at which the Government bears the burden of proof? For the reasons set forth below, the Court holds that the Third Circuit's decision in *German Santos* . . . supplies the answer to that question and that the factors set forth in that case favor granting Petitioner a second bond hearing.") (O'Hearn, J.); *Fadel v. Warden of Moshannon Valley ICE Processing Ctr.*, 2026 WL 1649901, at *3 (W.D. Pa. June 8, 2026) ("Accordingly, the Court will apply the *German Santos* factors to determine whether Petitioner's continued detention [under § 1226(a)] has become unreasonable.") (Haines, J.); *A.J.R. v. Rokosky*, 2026 WL 592136, at *2 (D.N.J. Mar. 3, 2026) (applying *German Santos* factors to § 1226(a) detainee and ordering new bond hearing after eight months of detention) (Bumb, C.J.); *but see Onuwa v. Field Office Director*, 2026 WL 772435, at *2 (D.N.J. Mar. 19, 2026) (Shipp, J.) (finding that a second bond hearing "may be available in [] extreme case[s], even a two year detention period did not in and of itself warrant relief in light of the procedural mechanisms—including bond appeals and bond redeterminations in the immigration courts—available to section 1226(a) detainees").

19 *Buele Morocho* implicitly acknowledged that release is an appropriate habeas remedy for noncitizens similarly deprived of their liberty without adequate due process. *See Buele Morocho*, 189 F.4th at 291 (affirming district court order granting petition for writ of habeas corpus and ordering habeas relief in the form of release). Although *Buele Morocho* did not discuss prolonged detention, it is nevertheless instructive as to the remedy of release, and because Petitioner was similarly wrongfully detained under § 1225(b)(2)(A).

extent that the Third Circuit held in *Borbot* that the duration of detention alone generally cannot sustain a due process under § 1226(a), that holding was limited to cases where the detainee has received an initial bond hearing free from constitutional defects"). Although the Court need not apply the *German Santos* factors to this case because it is granting habeas relief on alternative grounds, it will do so to explain why release and certain directives in the accompanying order—and not a second bond hearing—is the appropriate remedy here.

"The most important factor" in the "highly fact-specific inquiry" is (1) the "duration of detention." *German Santos*, 965 F.3d at 211. Courts must also consider: (1) "whether the detention is likely to continue"; (2) "the reasons for the delay"; and (3) "whether the alien's conditions of confinement are meaningfully different from criminal punishment." *Id.* If a noncitizen's "civil detention under § 1226([a]) looks penal, that tilts the scales toward finding the detention unreasonable." *Id.*

First, Petitioner's duration of detention under § 1226(a) favors release.[20] Although there is "no presumption of reasonableness of any duration . . . detention becomes more and more suspect after five months." *Id.* Here, Petitioner has been in civil immigration

---

20 In applying *German Santos* to § 1226(a), Judge O'Hearn recognized that "if the Constitution can require a bond hearing for aliens convicted of crimes held under a statutory provision that does not provide for bond at all, it necessarily can require one for non-citizens detained under § 1226(a), which expressly contemplates release and applies to individuals without disqualifying criminal convictions." *Zheng*, 826 F. Supp. 3d at 554 n.2.

detention for over ten months, and the Court finds that the duration of his detention favors relief.

Second, Petitioner has also "established that he is likely to stay detained for some time." *J.G.J. v. Sage*, 2026 WL 915576, at *10 (M.D. Pa. Apr. 3, 2026). He has no final order of removal and his second appeal to the BIA was filed approximately one week ago and remains pending before the BIA. (Doc. 13-1). "This means he will stay in prison as long as it takes the Board to issue its decision." *German Santos*, 965 F.3d at 212. "Under these circumstances, the Court finds the second *German Santos* factor favors granting habeas relief." *J.G.J.*, 2026 WL 915576, at *10.

Third, the Court considers the reason for delaying, and asks, "whether either party made careless or bad-faith errors in the proceedings that caused unnecessary delay." *German Santos*, 965 F.3d at 211. Here, one reason for the delay relates to the IJ's first removal order having been affirmed in part, vacated in part, and remanded by the BIA. The Court could also attribute delay to IJ McCary's failure to provide Petitioner with a constitutionally adequate bond hearing. Under these circumstances, the Court finds the reasons for the delay can be attributed to Respondent but will nevertheless find this factor neutral.

Fourth, the Court "next finds that Petitioner's civil immigration detention at FCI Lewisburg 'is indistinguishable from criminal punishment.'" *J.G.J.*, 2026 WL 915576, at *10

(quoting *German Santos*, 965 F.3d at 213). If a noncitizen's civil detention looks penal, "that tips the scales towards a finding that his detention has become unreasonable." *Id.*

Weighing the *German Santos* factors, the Court concludes that Petitioner's civil immigration detention under § 1226(a) has become unreasonably prolonged. *See Zheng*, 826 F. Supp. 3d at 562 (concluding "that Petitioner's five-month detention—without a final order of removal and without a constitutionally adequate bond determination—has reached the point at which continued detention is presumptively unreasonably, and the burden shifts to the Government to justify it with clear and convincing evidence"). The Court next considers the appropriate remedy.

**D. Immediate Release is the Appropriate Remedy.**

Having concluded that Petitioner's bond hearing was fundamentally unfair, and that the duration of his detention under § 1226(a) has become unreasonably prolonged, the Court now turns to the appropriate habeas remedy. Here, "Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate bond hearing." *Zheng*, 826 F. Supp. 3d at 560 (ordering release); *see also Mujica-Marquez*, 2026 WL 1483740, at *5 (ordering release after determining petitioner was subject to two due process violations).

Like other courts cited herein, the Court finds that "simply ordering a second bond hearing" after two due process violations "would not adequately remedy the constitutional

injury" Petitioner has suffered. *Zheng*, 826 F. Supp. 3d at 560; *see also Mujica-Marquez*, 2026 WL 1483740, at *5 (ordering release instead of a second bond hearing after respondent twice violated petitioner's due process rights). While ordering a second bond hearing for a § 1226(a) detainee at which the Government must demonstrate flight risk or danger by clear and convincing evidence "may be an appropriate remedy in some cases," this is not one of them. *Zheng*, 826 F. Supp. 3d at 562.

The record before this Court "is entirely devoid of any individualized justification for Petitioner's continued detention." *Id.* And Respondent neither argues nor directs the Court to any information that could satisfy *German Santos*' "heightened burden even if afforded the opportunity." *Id.* Considering the totality of the circumstances, and regardless of which standard of proof would apply, the Court declines to order a second bond hearing before an IJ. Because Petitioner has been deprived of his liberty for ten months without adequate procedural protections that the Due Process Clause requires, release is the only just and appropriate habeas remedy, as "[r]equiring Petitioner to endure further detention would only compound the constitutional violation."[21] *Id.*

---

21 Because Petitioner is entitled to habeas relief based his fundamentally unfair bond hearing and the duration of his detention, the Court declines to consider whether Petitioner's conditions of confinement at FCI Lewisburg would entitle him to habeas relief. And, because the Court is granting his petition and is doing so on constitutional grounds, it will dismiss Petitioner's "Motion Challenging Constitutionality of Agency Action" as moot. (Doc. 12).

## IV. CONCLUSION

In sum, Petitioner's habeas petition will be granted because the only custody redetermination throughout his ten-month civil immigration detention was fundamentally unfair and violated due process. Respondent will be directed to immediately release Petitioner Fallou Sall from the custody of the Warden of FCI Lewisburg and file an affidavit or declaration pursuant to 28 U.S.C. § 1746 confirming that Petitioner has been released from custody. Respondent will be permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b), absent a compelling change in circumstances.

The Court will also temporarily enjoin Respondent from re-arresting Petitioner for a period of 7 days to ensure the habeas remedy is effective and further direct Respondent that any future attempts "to re-detain Petitioner under § 1226(a) must comport with due process" which in Petitioner's case now requires placing the "burden on the Government to justify continued detention." *Zheng*, 826 F. Supp. 3d at 563. Accordingly, if the Government elects to re-detain Petitioner pursuant to § 1226(a) it shall be held to a "clear and convincing" evidentiary standard and must first demonstrate to a fair and impartial IJ that detention is necessary because Petitioner presents a danger to the community or would pose a flight risk if released. A separate Order follows.

Robert D. Mariani
United States District Judge